Mr. Chief-Justice Cartter
delivered the opinion of the court:
■ In the case of the Northern Liberty Market Company against Steubner, we are presented with the following state of facts as recited in the record: * .
“ Upon the trial of this cause, the plaintiff", to maintain the issue on its part joined, gave evidence tending to prove that it was a body corporate organized under the general incorporation act of the District of Columbia; that it owned in fee (subject to a deed of trust for a part of the purchase money) the west half of square numbered five hundred and. fifteen in the city of Washington and the District of Columbia; that prior to January, 1875, it erected on said ground, or part thereof, a large and commodious market building with numerous stalls, adapted to the various kinds of business usually conducted in a public market. That in January, 1875, it sold at public auction, after due notice, the right to occupy said stalls for a term of ninety-nine years, renewable forever; that the plaintiff purchased on said terms stall No. 388, and entered into possession thereof; that he paid the deposit required at the time of the sale, and there *306 after paid some of the purchase money notes; that by the consent of the plaintiff he removed from said stall first purchased by him to another stall, to wit, stall No. 315; that on the first day of March, A. D. 1881, the said defendant was indebted to the plaintiff in the sum of $112, for rent of said stall so occupied by him. It was admitted that said sum had never been paid, either in whole or in part. And thereupon the plaintiff rested.
“ Whereupon the defendant having been called, testified that he purchased the first-mentioned stall, and had paid thereon the sum of $400 on account of the notes executed by him as aforesaid; that said sum had never’been returned to him by the plaintiff, and he claimed the right to set off said sum against the plaintiffs’ demand to the extent of said demand. And the court sustained this view and instructed the jury to find a verdict for the defendant ,to which ruling and instruction of the court the said plaintiff by its counsel then and there duly excepted.”
We do not think that the facts here recited entitle the defendant to make a set off of any portion of the.amount p&id by him on account of the purchase of thisstall. The only light that the court has on the subject is that the plaintiff “sold at public auction, after due notice, the right to occupy said stalls for a term of ninety-nine years, renewable forever; and the defendant purchased on said terms stall No. 333 and entered into possession thereof; that he .paid the deposit required at the time of the sale, and thereafter paid some of the purchase money notes.”
Well, what does this amount to? How can the fact that the market company sold this stall for a given price to the defendant, who paid a part of the money on it, raise a right in the defendant to set off' that payment against his liability for the money due on a different stall? From the very terms of the recital here, he ought not to recover it back. He does not set forth that this money was obtained from him by fraud and deception. If he did, he could not set it off' in an action of assumpsit, for the supervention of the issue of *307 fraud would deprive it of that reciprocation of indebtedness which enables a party to come into court and set off a reciprocal indebtedness. You have to introduce a new issue, one of a tortious character, for the purpose of establishing the foundation of the liability; and the moment you are compelled to do that, you deprive the set'off of its eligibility to oppose itself to a demand.
It does not appear that the money was paid by mistake ; it is not even assumed that it was. It was paid understanding^. It was paid in consideration of the sale of a leasehold interest in a stall in the market house. There is no allegation that it was without consideration. On the contrary, so far as the record goes, there was a thoroughly legal and reasonable contract upon ,a sufficient consideration. From the very "terms, then, of the recital in the record the defendant shows that he is not entitled to recover back this money.
It was argued, however, that the market company had no existence, for the purpose of making leases of its stalls, and that even if it had an existence for that purpose, the right did not reach to the extent exercised in this case.. In other words, the point was raised and strenuously insisted upon that the market company, although it owned the fee simple of the market, had no power under its charter to make a lease of its stalls for ninety-nine years, renewable forever, for the reason that its corporate existence was limited to twenty years. If that question were properly raised here we would have to determine it. Individually, I have no doubt about the power of this corporation to sell all it has in this property; to give just as large a title as it has in it — a, title in fee simple. It had the power to hold that title; to make the purchase and during its existence it had the power to sell it. But that is merely my individual opinion. The court does not consider that question to be raised by the record, and therefore will not pass upon it.
In a case which was heard in the Supreme Court of the United States on appeal from this court, the case of the Northern Liberty Market Co. vs. Kelly, 113 U. S., 199, *308 this very question was referred to, but left open, the court paying that it was unnecessary to determine it in the case before it, and we think it is also unnecessary to determine it here. All that we now decide is that the defendant has not, upon his own statement, shown that he is entitled to this money. He says, upon this record, that -he purchased stall No. 333, and he asks to have the purchase money paid back without showing why it should be paid back. The purchaser of any piece of property might, with the “same propriety,- make the same request. We are all united in the opinion that no right to set off’ this money has been shown in this case. The judgment is therefore reversed.
The ease of the same company against Joseph Prather has also been submitted to us. A similar ease — substantially on all fours with this, the suit being upon the same subject-matter and between the same parties, if not in person at least in identity with this plaintiff — was decided by the Supreme Court of the United States in the case of Nelly which I have just referred to. In that case the parties had treated, as here, in compromise, and notes had been given in pursuance of that compromise, and the court held that the compromise w'as a sufficient consideration for the promise to pay. Mr. Justice Gray, delivering the opinion of the court, after reciting the facts said :
“ The plaintiff’ insists that the original notes were valid, because a corporation empowered to hold and convey real estate for the objects of its incorporation, may convey an estate in fee, or any less estate, in lands w'hich it has purchased, and may, therefore, make a valid lease of them for any term of years, though extending beyond the limit of its corporate existence. But it is unnecessary to express a definitive opinion upon that point, because it is agreed in the case stated that the defendant gave, in compromise of the original twenty notes for $171.05 each, the new notes for $1,881.60. If the plaintiff’ had exceeded its corporate powers in making the original contract, yet it had authority *309 to compromise and settle all claims by or against it under that contract. Morville vs. American Tract Society, 123 Mass., 129. The compromise of the disputed claim on the original notes was a legal and sufficient consideration for the new note. Cook vs. Wright, 1 B. & S., 559; Tuttle vs. Tuttle, 12 Met., 551; Riggs vs. Hawley, 116 Mass., 596. By the terms of the agreement of compromise the plaintiff’s cause of action on the original notes was not to revive, in ease of the new note not being paid at maturity, except upon the surrender of this note to the defendant. The plaintiff, not having surrendered it, but holding and suing upon it as well as upon the original notes, has not performed the condition on which the revival of the right of action of the original notes depended. It follows, that the plaintiff cannot recover in this action on the original notes for $171.05 each, but is entitled to recover on the new note for $1,881.60, and also, for like reasons, on the note for $394.08, made by Cross and guaranteed by the defendant.”
Now this action — the case at bar — was brought upon similar notes and none other, and I do not think that anything that I could say would emphasize the judgment of this court more' than what has been said in the case which I have just read. In that case the Supreme Court of the Hnited States decided two things in express terms which directly apply to the case at bar. One is that the original notes supplanted by the compromise cannot be sued upon, and the other is that the notes given in pursuance of the compromise can be. That decision determines this case, and ought to have quieted it before it was argued. The judgment is reversed.